UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JOHN D. KNIGHT, JR., )
    Plaintiff, )
     )
v. ) No. 3:07-CV-415
     ) (Phillips)
ENGERT PLUMBING & HEATING, INC., )
    Defendant. )

### MEMORANDUM OPINION

Plaintiff has brought this action against his former employer alleging claims under the Tennessee Handicap Act, the Tennessee Human Rights Act, the Tennessee Public Protection Act, the Age Discrimination in Employment Act, the Equal Pay Act, the Americans with Disabilities Act, the Family Medical Leave Act, for common law retaliatory discharge, for intentional/negligent infliction of emotional distress, and for hostile work environment. This matter is before the court on the defendant's motion for summary judgment.

### I.  Factual Background

Plaintiff John Knight was hired by Engert Plumbing in 1992 as a plumber. He continued his employment with Engert for about a year and a half and then left for other employment for about six months. Upon his return to Engert, Knight was hired back as a foreman. He remained a foreman for the entire period of employment until he was laid off

on June 7, 2006, as part of a reduction in force. During that reduction in force, thirty-eight (38) employees, including Knight, were either laid off or voluntarily quit during the period from January to August 2006. Engert's reason for the reduction in force was that work levels were declining.

During his employment with Engert, Knight suffered four on-the-job injuries. The first injury occurred in 1996 when he popped a tendon in his elbow while pulling on a pipe wrench. He was off work with that injury for about two months and received workers' compensation benefits. His second injury occurred in 2000 when he was diagnosed with carpal tunnel syndrome and underwent surgery. He received workers' compensation benefits for that injury and was out of work about two weeks. Knight's third injury occurred in 2002 when he fell off a ladder and broke a couple of ribs and sprained his back. He missed three or four months of work as a result of that injury and received workers' compensation benefits. He returned to work with a restriction that he was limited to fifty pounds of weight lifting.

His fourth injury occurred on November 11, 2002, when a pressurized air hose blew loose and hit him in the corner of his left eye. Knight underwent seven surgeries to repair a detached retina. He can see out of his left eye but his depth perception is off, the vision is blurry, and he sees two or three of everything. There are no problems with the vision in his right eye. He returned to work in either June or July 2003. Knight was contacted by his immediate supervisor at Engert and told that he would be put back to work if he fired his lawyer, which he did. When Knight returned to work, it was with restrictions

that "due to his decreased vision and visual field in the left eye as well as his glare and double vision, he will have difficulty with jobs requiring depth perception (working in locations where there is a risk of falling, use of power tools requiring depth perception)."

Knight claims that he was forced to work outside of his restrictions by his supervisors at Engert. Beginning in 2000 but getting worse in 2002 after the eye injury Knight alleges he was harassed daily by Engert employees. He alleges that Engert employees were bringing up that he always sued Engert; he was called names such as "handicapped guy" or referred to as "gooch-eyed."

In addition, Knight alleges he was terminated for being made to cover up illegal conduct such as employee theft and the improper installation of medical gas pipes. Knight alleges that when he reported this activity to his immediate supervisor, Dean Thomas, he would receive a response similar to "If you don't like it, go home." Knight avers that in 1997, Dean Thomas had two employees go to a sawmill and pick up lumber to take to Thomas's house. The time for the employees was then charged back to the job on which plaintiff was the foreman and then later he was accused of losing time on that job. Other similar situations testified to by Knight included sending employees to work at Stock Creek Baptist Church, sending employees to work on a baseball field for Dean Thomas, sending employees to work on a pool for Dean Thomas, and sending stack stone building materials to the home of Dean Thomas. Knight testified that the last time that this type of activity occurred was in 2004.

After 2004, Knight said that he refused to participate in these activities anymore. He no longer sent men or materials when his supervisor asked for them after 2004, and he no longer listened to the requests of Dean Thomas. Knight stated that he never got in trouble with his employer relating to these activities, but he was concerned that he would be ridiculed for his jobs not making money. Knight felt that he was terminated because he would not "go with the flow." Knight never reported any of the alleged illegal activity to anybody until he reported it to Donna Johnston, the new President of Engert in 2006.

The other major illegal activity that Knight claims he was required to cover up was improprieties with the way Engert installed medical gas lines in hospitals. Knight alleged that medical gas pipes were improperly installed using tools that were not clean and that plastic plugs were left in the medical gas lines and not removed, which he claimed resulted in toxic gas coming into contact with hospital patients. He reported these issues to Dean Thomas, but Thomas threatened him by saying "you do it the way we've been doing it or your can go home."

Knight also alleges that Rick Breeden, a "med gas inspector," was taking the medical gas test for Engert employees, even though the employees should have been taking the test themselves. Knight reported this to his supervisor, Dean Thomas, and Thomas told him "Don't worry about it. Just do what I tell you." The most recent occasion that Knight recalled this occurring was in 2005.

4

Knight sent an anonymous letter to Donna Johnston in early 2006. Knight stated that his purpose in sending the letter was to bring Donna Johnston up to date and to let her know about the stealing that was going on at Engert. Knight later met with Johnston to discuss the allegations in the letter. Johnston took Knight's complaints to John Thomas and Dean Thomas, who denied them, and Johnston did not further pursue the matter.

Knight testified that as further retaliation, in 2006, Dean Thomas demoted him from a foreman position, took away his company phone, and eliminated his ability to "turn in time" for himself and his helpers, which foreman would normally do and took all his men away. Knight also testified that in 2006, other employees who had been with Engert a shorter period of time, were making more than him.

Knight testified that he requested FMLA leave in February 2006, which was denied by Dean Thomas. Knight requested FMLA leave because he had discovered that his two daughters had been molested by their uncle several years earlier, but he only learned of it in early 2006.

Knight was terminated from his employment with Engert on June 7, 2006, during a reduction in force, due to declining work levels. He filed an employment discrimination complaint with the Tennessee Human Rights Commission (THRC) and the Equal Employment Opportunity Commission (EEOC) on August 17, 2006. The EEOC

5

issued a "right to sue" letter to Knight on September 7, 2007. The instant complaint was filed by Knight on November 2, 2007.

## II. Standard for Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Initially, the burden is on the moving party to conclusively show that no genuine issues of material fact exist. *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323.

## III. State Law Claims

Engert argues that the claims of Knight brought pursuant to the Tennessee Handicap Act, the Tennessee Human Rights Act, the Tennessee Public Protection Act, for common law retaliatory discharge, for intentional/negligent infliction of emotional distress, and for hostile work environment under state law, are all barred by either the one-year

6

statute of limitations codified in Tenn. Code Ann. § 4-21-311(d) or the one-year statute of limitations codified at Tenn. Code Ann. § 28-3-104.

The Tennessee Human Rights Act (THRA) has a one-year statute of limitations and thus claims under the Act are subject to a one-year bar. Tenn. Code Ann. § 4-21-311(d); *Martin v. Boeing-Oak Ridge Co.,* 244 F.Supp.2d 863, 871 (E.D.Tenn. 2002); *Weber v. Moses*, 938 S.W.2d 387, 391-92 (Tenn. 1996). A claim of retaliatory discharge is governed by the one-year statute of limitations found in Tenn. Code Ann. § 28-3-104. *Weber*, 938 S.W.2d at 391-92; *Kendall v. Vanderbilt Bill Wilkerson Center*, 2005 WL 1390047, *3 (Tenn.Ct.App. June 13, 2005). The applicable statute of limitations for a personal tort action including a cause of action for intentional infliction of emotional distress is the one-year statute codified at Tenn. Code Ann. §28-3-104. *Field v. Graffagnino*, 514 F.Supp.2d 1036, 1043 (W.D.Tenn. 2007); *Harvey v. Martin*, 714 F.2d 650, 652 (6th Cir. 1983). The courts of Tennessee have held that a cause of action resulting from employment retaliation is a personal injury. *Headrick v. Union Carbide Corp.*, 825 S.W.2d 424, 425 (Tenn.Ct.App. 1991). It is clear that under Tennessee law a discrimination cause of action accrues and the statute of limitations commences when the employee receives notice of the employer's termination decision. *Jewell v. Smurfit-Stone Container Enterprises Inc.*, 2010 WL 5139261, *2 (E.D.Tenn. Dec. 10, 2010); *Weber,* 938 S.W.2d at 391-92.

Under the THRA, an aggrieved party may seek relief under one of two avenues. One avenue is to file an administrative complaint with the THRC within 180 days

after the discriminatory practice and then seek judicial review in the event the decision of the THRC is not favorable. *Conner v. City of Jackson*, 669 F.Supp.2d 886, 890 (W.D.Tenn. 2009); *Bennett v. Steiner-Liff Iron and Metal Co.,* 826 S.W.2d 119, 120-21 (Tenn. 1992). The THRA's one-year limitations period for bringing a direct court action is not tolled while administrative charges are pending with the THRC or the EEOC. *Burnett v. Tyco Corp.*, 932 F.Supp. 1039, 1044 (W.D.Tenn. 1996); *Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1484 (6th Cir. 1989) (cause of action barred by the one year statute because once the plaintiff went the administrative route she could not file a direction action under the THRA, but had to file an administrative appeal); *Bay v. Fairfield Resorts, Inc.,*, 2006 WL 3484236 *2 (E.D.Tenn. Nov. 30, 2006) (one year limitation period not tolled while administrative charges pending); *Martin v. Boeing-Oak Ridge Co.,* 244 F.Supp.2d 863, 871 (E.D.Tenn. 2002) (one year limitation period not tolled while administrative charges are pending); *Easter v. Martin Marietta Energy Systems Inc.,* 823 F.Supp. 489, 496 (E.D.Tenn. 1991) (complaint untimely when filed after more than one year and plaintiff pursued an administrative claim past the one year bar); *Bennett,* 826 S.W.2d at 120 (claim barred after one year when plaintiff pursued administrative remedy); *Conner*, 669 F.Supp.2d at 890 (one year limitation not tolled while administrative charges are pending with the THRC or EEOC).

The same analysis applies to Knight's remaining state law claims. The district court in *Burnett,* in addition to holding that the statute of limitations for a claim under the THRA was not tolled during administrative proceedings, also held that claims for intentional and negligent infliction of emotional distress, outrageous conduct, invasion of privacy,

8

assault and battery were barred by the one year statute of limitations. *Burnett,* 932 F.Supp. at 1044.  Similarly, the district court dismissed claims based upon theories of outrageous conduct, intentional infliction of emotional distress, and invasion of privacy based upon the one-year statute of limitations set forth in Tenn. Code Ann. § 28-3-104.  *See Scarborough v. Brown Group Inc., 972 F.Supp. 1112, 1124* (W.D.Tenn. 1997).  The district court in *Scarborough* specifically rejected the argument that the statute of limitations had been tolled by the filing of administrative charges with the THRC and the EEOC.  *Id.*  Here, the record shows that Knight's complaint was filed on November 2, 2007, more than one year after his termination by Engert on June 7, 2006.  Thus, his state law claims are untimely and subject to dismissal.

In an attempt to save his state law claims, Knight argues that Engert's actions in having him fired from his subsequent employer, as well as continuing to slander him during his employment with that employer, constitute a "continuing violation," which extends the limitations period.  Knight states that the Tennessee Supreme Court has recognized that the THRA's statute of limitations incorporates the continuing violation exception.  *See Booker v. Boeing Co.,* 188 S.W.3d 639, 643 (Tenn. 2006).  Knight alleges that he was terminated from his subsequent employer, Shoffner, on October 24, 2009, because Shoffner found out that he had made workers' compensation claims against Engert. Knight alleges that John Thomas spoke to his supervisor at Shoffner and that was one of the reasons that he was terminated from Shoffner.

9

Engert points out that Knight's allegations are based on statements allegedly made by a Shoffner supervisor to Terry Summers and Jimmy Cornett that John Thomas had made the statements regarding Knight's past workers' claims, and those two individuals told Knight. The factual circumstances Knight relies on in support of his continuing violation argument is based upon multiple layers of hearsay that would not be admissible at trial and likewise do not raise a genuine issue of material fact sufficient to defeat summary judgment. Other than hearsay statements, Engert argues, Knight points to no specific statements in the record that were made by any individuals with Engert.

As a general rule, "evidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded. *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007). Without Knight's hearsay testimony, the record contains no evidence that any representatives of Engert took any action after his termination which would have possibly extended the statute of limitations for any of his state law causes of action. Accordingly, the court finds that the applicable statute of limitations has expired on all of Knight's state law claims, and that Engert is entitled to judgment as a matter of law on Knight's claims for violation of the Tennessee Handicap Act, the Tennessee Human Rights Act, the Tennessee Public Protection Act, for common law retaliatory discharge, for intentional/negligent infliction of emotional distress, and for hostile work environment, which claims are hereby **DISMISSED.**

**IV. ADEA Claim**

Engert asserts that Knight's claim under the Age Discrimination in Employment Act (ADEA) is barred for failure to exhaust administrative remedies because Knight failed to include a charge of age discrimination in his complaint filed with the THRC and the EEOC.

The filing of a charge of discrimination with the EEOC is a prerequisite to the filing of a lawsuit under the ADEA. *Jewell v. Smurfit-Stone container Enterprises Inc.*, 2010 WL 5139261 * 2 (E.D.Tenn. Dec. 10, 2010). The general rule in the Sixth Circuit is that the judicial complaint is limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination. *Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998); *Ang v. Proctor & Gamble Co.,* 932 F.2d 540, 545 (6th Cir. 1991). In *Davis*, the Sixth Circuit specifically held that a claim of age discrimination did not grow out of race discrimination and retaliatory discharge claims included by the plaintiff in the EEOC charge and summary. *Davis*, 157 F.3d at 463.

Knight filed his administrative complaint with the THRC and the EEOC alleging discrimination based upon disability and alleging retaliation by checking the boxes for both of those categories. Knight did not check the box for "age," however. Knight attached a four-page addendum to his complaint in which he described his claim in detail, but failed to mention any discrimination or retaliation based upon age. Knight's age discrimination claim neither in fact grew out of the EEOC's investigation of disability and retaliatory discharge claims, nor would the facts related to these two claims prompt the EEOC to investigate age discrimination. Knight's charge did not give the EEOC sufficient

11

notice of his age discrimination claim to investigate or facilitate conciliation with this employer on that ground.  On these facts, it could not reasonably be expected that an EEOC investigation of age discrimination would grow out of Knight's charges of disability discrimination and retaliatory discharge.  Accordingly, Knight's ADEA claim against Engert is **DISMISSED** for failure to exhaust his administrative remedies.

### V.   Equal Pay Act

Engert states that in his complaint, Knight asserts that he was denied a raise while a raise was provided to his non-disabled male counterpart and younger male employees.  Engert argues that this claim must be dismissed because the Equal Pay Act only applies to discrimination based upon gender.  In his response, Knight concedes that his Equal Pay Act claim should be dismissed.  Accordingly, the court will **GRANT** Engert's motion for summary judgment on this claim.

### VI.   Americans with Disabilities Act

Knight alleges that he was discriminated against on the basis of a disability in violation of the Americans with Disabilities Act (ADA). The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  In order to recover on a claim of discrimination under the ADA, Knight must show that "(1) he is an individual with a

disability, (2) he is otherwise qualified to perform the job requirements, with or without reasonable accommodation, and (3) he was discharged solely by reason of his handicap." *Monette v. Elect. Data Sys. Corp.,* 90 F.3d 1173, 1178 (6th Cir. 1996).

Knight must first establish that he is disabled. In order to qualify as disabled, he must have a physical or mental impairment that has a substantial limiting effect on a major life activity. 42 U.S.C. § 12101. This impairment must prevent or significantly restrict him from performing a class of jobs or a broad range of jobs compared to the average person having comparable training, skills, and ability. *See McKay v. Toyota Motor Mfg. USA Inc.,* 110 F.3d 369, 372 (6th Cir. 1997).

Here, Knight suffered two on-the-job injuries that resulted in restrictions. As a result of his 2002 fall from a ladder, he was restricted from lifting more than fifty pounds. As a result of his eye injury in November 2002, his doctor opined that he would have difficulty performing jobs which required depth perception. However, the record shows that Knight was able to perform his job both as a foreman and as a plumber until his termination on June 7, 2006. Moreover, after his termination from Engert, Knight obtained employment with another plumbing contractor and was employed full time as a plumber for that company from June 2006 until December 2009. Based on these facts, the court finds that Knight did not suffer from a disability which prevented him from performing the job for which he was trained. *See Bates v. Dura Auto Sys. Inc.,* 650 F.Supp.2d 754, 772 (M.D.Tenn. 2009) (recognizing that the plaintiffs were able to perform their jobs at the time they were terminated and thus were not limited in the major life activity of working). Accordingly, the

court finds that Knight cannot establish that he was disabled, within the meaning of the ADA, and his claim is hereby **DISMISSED.**

### VII. Family Medical Leave Act

The Family Medical Leave Act (FMLA) allows eligible employees to take up to twelve weeks of unpaid leave for certain qualifying reasons, including to care for a child with a serious health condition. 29 U.S.C. § 2612(a)(1). The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (1) inpatient care in a hospital, hospice, or residential medical care facility, or (2) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). To establish an FMLA interference claim, Knight must show that (1) he was an eligible employee, (2) he was entitled to leave under the Act, (3) he provided notice of the need for leave; and (4) his employer denied benefits under the Act. *Saroli v. Automation Modular Components, Inc.,* 405 F.3d 446, 454 (6th Cir. 2005). The reason cited by Knight for his request for leave under the FMLA was that he discovered on February 13, 2006, that his two daughters had been sexually molested by their uncle years prior to his request for leave.

Although Knight only learned of the molestation of his daughters at the time he requested FMLA leave in February 2006, the molestation occurred several years earlier. Knight has provided no evidence that his daughters required (1) inpatient care in a hospital, hospice, or residential medical care facility, or (2) continuing treatment by a health care provider in February 2006. Accordingly, the court finds that Knight has failed to establish that his daughters were suffering from a "serious health condition" requiring "continuing

14

treatment by a healthcare provider" and his claim for interference with FMLA rights fails as a matter of law.

Knight also alleges that his inclusion in the reduction in force (RIF) was in retaliation for requesting FMLA leave. To establish a *prima facie* claim of retaliation under the FMLA, Knight must show that: (1) he was engaged in activity protected under the FMLA; (2) Engert knew that he was exercising his rights under the FMLA; (3) after learning of his exercise of FMLA rights, Engert took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *See Arban*, 345 F.3d at 404.

Here, Knight has not shown a causal connection between his request for FMLA leave and his inclusion in the RIF. Temporal proximity alone, without additional record evidence, is generally insufficient to establish a causal connection in a retaliation claim. *Randolph v. Ohio Dept of Youth Servs.,* 453 F.3d 724, 737 (6th Cir. 2006); *Brown v. ASD Computing Ctr.,* 519 F.Supp. 1096, 1116 (S.D.Ohio 1981) (Timing alone usually will not establish the causal connection – there must be other evidence in the record to support an inference of retaliation). Moreover, once Engert has articulated a non-retaliatory reason for its action, the burden shifts to Knight to show that Engert's proffered reason is a pretext for retaliation. *See Texas Dept of Com. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). In order to meet this burden, Knight must show that: (1) Engert's proffered reason had no basis in fact; (2) Engert's proffered reason did not actually motivate the action; or (3) that

Engert's proffered reason was insufficient to motivate the action. *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994).

Knight has offered no evidence in support of his conclusory allegation that he was selected for the RIF because he had requested FMLA leave. Engert has offered evidence that Knight was terminated as part of a RIF. During that RIF, 38 employees, including Knight, were either laid off or voluntarily quit due to declining work levels. Knight has offered no evidence to rebut Engert's non-retaliatory reason for its action. Accordingly, the court will **GRANT** summary judgment to Engert on Knight's claims under the FMLA.

## VIII. Disparate Treatment

Although not stated in his complaint, Knight asserts that his EEOC charge was drafted in such a way as to put Engert on notice of his claim of disparate treatment. The court disagrees. As stated above, Knight's administrative complaint with the THRC and the EEOC alleged discrimination based upon disability and retaliation. Nowhere in the complaint or its attached four-page addendum does Knight make a claim for disparate treatment nor any facts in support of such a claim. Knight's disparate treatment claim neither grew out of the EEOC's investigation of disability and retaliatory discharge claims, nor would the facts related to these two claims prompt the EEOC to investigate a disparate treatment claim. Knight's charge did not give the EEOC sufficient notice of his disparate treatment claim to investigate or facilitate conciliation with his employer on that ground. Accordingly, any claim Knight now makes for disparate treatment is **DISMISSED** for failure to exhaust his administrative remedies.

16

Case 3:07-cv-00415   Document 47   Filed 08/02/11   Page 16 of 19   PageID #: 965

## IX. Hostile Work Environment/Harassment

As to Knight's claims for hostile work environment/harassment , Knight must show that (1) he was a member of a protected class, (2) he was subjected to unwelcome harassment, (3) the harassment was based on [his protected status], (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile or offensive work environment, and (5) the employer is liable. *Barrett v. Whirlpool Corp.,* 556 F.3d 502, 515 (6th Cir. 2009).

Knight's EEOC charge alleges discrimination based upon disability and retaliation. However, as stated above, the court has found that Knight did not suffer from a disability. Knight has failed to establish that he belonged to any protected class of employees, and thus, he cannot establish a *prima facie* case for hostile work environment under any federal statutes. Moreover, it is clear to the court, based on Knight's own deposition testimony, that the conduct about which he now complains was not sufficiently pervasive to create an actionable hostile work environment. His allegations relate to isolated episodes that occurred over the period of years, and were not severe enough or pervasive enough to create an environment that a reasonable person would find hostile or abusive.

## X. Constructive Discharge

In his response to Engert's motion for summary judgment, Knight asserts a claim for constructive discharge, and then states the legal standard for the claim under federal law. However, Knight offers no facts in support of such a claim, and as the record

17

in this case shows, Knight was terminated by Engert as part of a reduction in force. Knight did not voluntarily leave Engert's employment, and thus, could not have been constructively discharged.

Finally, Knight attempts to save his time-barred claims by arguing that an employer's failure to post the mandatory EEOC notices may be grounds for equitable tolling, citing *Kephart v. Institute of Gas Technology*, 581 F.2d 1287 (7th Cir. 1978) and *Smith v. American President Lines Ltd.,* 571 F.2d 102 (2nd Cir. 1978). Engert admits that it did not post the required EEOC notices, nor did the company have any policies addressing discrimination during Knight's employment. However, the cases relied on by Knight pertain to a plaintiff's failure to timely make an EEOC filing, which is not the case here. Knight timely filed his charge of discrimination with the THRC and EEOC, but he failed to bring a judicial complaint within the time required by the applicable statutes for his state law claims, and failed to exhaust his administrative remedies for his federal claims. Therefore, the court finds that equitable tolling does not save Knight's time-barred claims under either state or federal law.

**XI.   Demotion**

Knight also alleges that in 2006, he was demoted from his foreman position by Dean Thomas. His company cell phone was taken away and he was sent to work under the supervision of another foreman at a job site. Knight testified that his pay did not change as a result of this alleged demotion. Knight admitted in his deposition testimony, that it was a common practice for one foreman to work under another foreman at Engert, depending

18

on the particular jobsite. The record shows that Knight was never demoted from a jobsite were he was the designated foreman, but he did work as a plumber at jobsites where other Engert employees were the designated foremen. Knight states that his "demotion" was in retaliation for refusing to comply with Dean Thomas' requests for construction materials and workmen to be sent to work on the Thomas's personal projects. However, Knight testified that he no longer sent men or materials after 2004. There is nothing in the record, aside from Knight's conclusory statements, to support any demotion in 2006, much less that it was in retaliation for actions which occurred in 2004 or earlier.

## XII.  Conclusion

For the foregoing reasons, the court finds that Engert is entitled to summary judgment on all of Knight's claims for workplace discrimination. Accordingly, Engert's motion for summary judgment [Doc. 16] is **GRANTED**.

The final pretrial conference scheduled for August 9, 2011, and the trial scheduled for August 16, 2011 are **CANCELLED.**

**ENTER:**

    s/ Thomas W. Phillips
United States District Judge